UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
GREGORY CASTILLO, AKEIM DOWNIE,
JORGE GUERRERO, LARRY MOSES, JR., and
AARON ROSE,

              **COMPLAINT**

        Plaintiffs,

      -against-

CITY OF NEW YORK; ROBERT F. ALIMENA
(Shield No. Unknown); NADEEM KHAN (Shield No. 25109);
JUAN P. GRULLON (Shield No. 6446);
S. MCFARLAND (Full name being presently unknown
to Plaintiffs; Shield No. Unknown); FATIMA R.
MONSOUR (Shield No. 24373); DARRIEN A. PHILLIPS   Jury Trial Demanded
(Shield No. 23806); SALI N. CERIMI (Shield No. 8390);
and JOHN and JANE DOE 1 through 44 (the names John and Jane
Doe being fictitious, as the true names are presently unknown), with
each person named individually and in their official
capacities,

        Defendants.
------------------------------------------------------------------ x

    Plaintiffs, GREGORY CASTILLO ("Mr. Castillo"), AKEIM DOWNIE ("Mr. Downie"),

JORGE GUERRERO ("Mr. Guerrero"), LARRY MOSES, JR. ("Mr. Moses") and AARON ROSE

("Mr. Rose", and together with Mr. Castillo, Mr. Downie, Mr. Guerrero and Mr. Moses,

"Plaintiffs" and each a "Plaintiff"), by and through their undersigned counsel, THE CAMPBELL

FIRM PLLC, as and for their Complaint against CITY OF NEW YORK (the "City") and ROBERT

F. ALIMENA; (Shield No. Unknown) ("Lt. Alimena"); NADEEM KHAN (Shield No. 25109)

("P.O. Khan"); JUAN P. GRULLON (Shield No. 6446) ("P.O. Grullon"); S. MCFARLAND (Full

name being presently unknown to Plaintiffs; Shield No. Unknown) ("P.O. McFarland"); FATIMA

R. MONSOUR (Shield No. 24373) ("P.O. Monsour"); DARRIEN A. PHILLIPS (Shield No.

23806) ("P.O. Phillips"); SALI N. CERIMI (Shield No. 8390) ("P.O. Cerimi"); and JOHN and

JANE DOE 1 through 44 (the names John and Jane Doe being fictitious, as the true names are presently unknown) (the "John and Jane Doe Defendants", and together with Lt. Alimena, P.O. Khan, P.O. Grullon, P.O. McFarland, P.O. Monsour, P.O. Phillips and P.O. Cerimi, the "Police Officer Defendants" and each a "Police Officer Defendant"; the Police Officer Defendants, together with the City are referred to herein as "Defendants" (with each person named individually and in their official capacities), hereby allege as follows:

## PRELIMINARY STATEMENT

1. The claims alleged in this Complaint arise in connection with Plaintiffs' attendance at a viewing of the body of Angelo Felix ("Mr. Felix"), a young man who died an untimely death, and the events that transpired in the Funeral Home beginning on April 26, 2024 and thereafter. Mr. Felix was being viewed at Funeraria Juan - John's Funeral Home located at 509 Liberty Avenue, Brooklyn, NY 11207 (which will be referred to sometimes as the "Funeral Home").

2. Mr. Felix died at the age of 30, after he was killed in an unfortunate drive by shooting in Atlanta, Georgia. Mr. Downie was also shot in the drive-by shooting and witnessed the death of his best friend, Mr. Felix.

3. Mr. Felix had many family and friends in attendance at the viewing at the Funeral Home. People came to pay their respects and to pray and to seek the comfort of (and to comfort) others who were mourning the tragic death of Mr. Felix.

4. The gathering of people at the Funeral Home was abruptly interrupted when NYPD stormed into the Funeral Home, disrupting the viewing and assembly of the attendees, who had the right to assemble and to pray for the deceased.

5. Without probable cause, representatives of the New York City Police Department (the "NYPD") began punching people, hitting them, throwing them doors, walls, fixtures and

furniture inside the Funeral Home and to the ground, into bushes or otherwise against cars outside the Funeral Home  for no reason.

6. The NYPD officers physically removed people from the Funeral Home and placed people under arrest either inside the Funeral Home, immediately outside the Funeral Home or nearby.

7. Each of the Plaintiffs were arrested without probable cause and suffered physical injury, property damage and significant emotional distress as a result of the respective unlawful arrest, search and detention of each Plaintiff respectively.

8. All of the Plaintiffs missed the funeral and burial of Mr. Felix, which occurred the following day.

9. Each of the Plaintiffs was damaged by the prosecution of unfounded claims against them, and ultimately, all of the charges against each of the Plaintiffs were dismissed.

10. NYPD assaulted, arrested, searched and detained each Plaintiff in an unlawful manner intentionally, recklessly, carelessly and/or negligently in direct violation of each of their federal and state constitutional rights and their rights under other federal, state and local laws.

11. The City of New York is responsible for the conduct of its agencies, including the NYPD.

12. Police officers from the NYPD descended upon the Funeral Home as a swarm of cops, yelling racial epithets and assaulting people.

13. Police officers rushed inside the Funeral Home, and there were racial slurs exchanged on both sides because of the targeted attack by NYPD officers upon a group of otherwise lawfully assembling people, who were principally Black and Hispanic.

14. On information and belief, some people were even forced into the casket room, where caskets were being toppled over.

15.    On information and belief, activities by a few unrelated individuals who were reportedly doing "donuts" or "burn-outs" in the street (as an acknowledgment and in respect of Mr. Felix's passing) called attention to area, but the Plaintiffs were not involved in any of that activity.

16.    On information and belief, there was a car crash purportedly involving an NYPD vehicle to which NYPD officers were also responding near the Funeral Home, which also did not involve Plaintiffs.  On information and belief, the accident was caused by a vehicle operated by the NYPD which was attempting to block people from leaving the area.

17.    Plaintiffs and others inside or immediately outside the Funeral Home were doing nothing more than exercising fundamental rights to assemble and pray, but the NYPD officers observed a large group of principally Black and Hispanic individuals gathered and unlawfully began arresting individuals based on trumped-up charges – all of which were ultimately dismissed against these Plaintiffs.

18.    Plaintiffs seek monetary damages (special, compensatory and punitive) against Defendants, as well as an award of attorney's fees for the Defendants' violation of Plaintiffs' rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, 1985; by the United States Constitution, including its First, Fourth, Sixth, Eighth and Fourteenth Amendments, and by the laws and Constitution of the State of New York, as well as a violation of New York City Administrative Code that prohibits bias in policing.

19.    The NYPD, acting under color of state law, intentionally and willfully subjected Plaintiffs to, *inter alia,* unlawful targeting and unlawful discrimination on the basis of race, false arrest, false imprisonment, fabrication of evidence, malicious prosecution, excessive use of force and assault.

**PARTIES**

20. Plaintiff GREGORY CASTILLO is currently a resident of Kings County in the City and State of New York. At the time of the events described herein, Plaintiff was a resident of Kings County in the City and State of New York.

21. Plaintiff AKEIM DOWNIE is currently a resident of Bronx County in the City and State of New York. At the time of the events described herein, Plaintiff was a resident of Queens County in the City and State of New York.

22. Plaintiff JORGE GUERRERO is currently a resident of Kings County in the City and State of New York. At the time of the events described herein, Plaintiff was a resident of Kings County in the City and State of New York.

23. Plaintiff LARRY MOSES, JR. is currently a resident of Kings County in the City and State of New York. At the time of the events described herein, Plaintiff was a resident of Kings County in the City and State of New York.

24. Plaintiff AARON ROSE is of currently a resident of Kings County in the City and State of New York. At the time of the events described herein, Plaintiff was a resident of Kings County in the City and State of New York.

25. Defendant CITY OF NEW YORK (sometimes referred to herein as "City") is a municipal corporation organized under the laws of the State of New York. Its seat of governance was and still is located at City Hall Park, New York, New York.

26. Defendant the City of New York operates the NYPD, which is located within the City of New York and operates within the five boroughs. At all times relevant hereto, the City of New York was responsible for enforcing the rules of the NYPD and for ensuring that personnel of such agency obeys the laws of the United States, the State of New York and the City of New York.

27.   By and through its agency, the NYPD, the City of New York was responsible for the appointment, training, supervision, promotion and discipline of all such agency personnel (which includes supervisory personnel), including the individual Police Officer Defendants herein.

28.   NYPD is a municipal police force and a governmental agency of the City of New York, and is therefore a department, agency, special purpose district, or other instrumentality of a local government within the meaning of 42 U.S.C. § 12131(1)(B).

29.   NYPD is responsible for the appointment, training, supervision, promotion and discipline of NYPD officers and supervisory NYPD officers, including the Police Officer Defendants.

30.   At all times relevant hereto, ROBERT F. ALIMENA (Shield No. Unknown) was, on information and belief, an officer with the rank of Lieutenant of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and within the scope of his employment as such.  On information and belief, Lt. Alimena provided information concerning an alleged assault on himself by Mr. Castillo, as well as alleged obstruction of governmental administration by Mr. Castillo, to P.O. Monsour, another Defendant herein, and on information and belief, supervised or otherwise was involved in the assault with use of excess force upon and arrest, unlawful search, detention and prosecution of Mr. Castillo.   P.O. Monsour then used such information in a criminal complaint signed by P.O. Monsour which set forth criminal allegations against Mr. Castillo, which led to the initiation of the criminal proceedings against Mr. Castillo.  Lt. Alimena is being sued in his individual capacity and in respect of his official capacity as an officer with the rank, on information and belief, of Lieutenant of the NYPD.

31.   At all times relevant hereto, NADEEM KHAN (Shield No. 25109) was an officer of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and within the scope of his employment as such.  On information and belief, P.O. Khan provided

information concerning an alleged forged North Carolina driver's license allegedly recovered from Mr. Castillo's pocket to P.O. Monsour, another Defendant herein, and on information and belief was involved in the assault with use of excessive force upon and arrest, unlawful search, detention and prosecution of Mr. Castillo. P.O. Monsour then used such information in a criminal complaint signed by P.O. Monsour which set forth criminal allegations against Mr. Castillo, which led to the initiation of the criminal proceedings against Mr. Castillo. P.O. Khan is being sued in his individual capacity and in respect of his official capacity as an officer of the NYPD.

32.    At all times relevant hereto, JUAN P. GRULLON (Shield No. 6446) was an officer of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and within the scope of his employment as such. P.O. Grullon signed a criminal complaint which set forth criminal allegations against Mr. Guerrero, which led to the initiation of the criminal proceedings against Mr. Guerrero, and on information and belief was involved in the assault with use of excessive force upon, and arrest, unlawful search, detention and prosecution of Mr. Guerrero. P.O. Grullon is being sued in his individual capacity and in respect of his official capacity as an officer of the NYPD.

33.    At all times relevant hereto, S. McFARLAND (Full name being presently unknown to Plaintiffs; Shield No. Unknown) was an officer of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and within the scope of his employment as such. On information and belief, P.O. McFarland was involved in the assault with use of excessive force upon, and arrest, unlawful search, detention and prosecution of the following two Plaintiffs, Akeim Downie and Larry Moses, Jr., respectively. P.O. McFarland signed a complaint that formed the basis of a Summons for each of the following two Plaintiffs, Akeim Downie and Larry Moses, Jr. The charges in each of these Plaintiffs cases were alleged violations of Penal Law Section 240.20, which technically are violations and not crimes under the Penal Law, but which

are handled through a criminal process.  This action led to the initiation of the proceedings against Mr. Downie and Mr. Moses, respectively.  P.O. McFarland is being sued in his individual capacity and in respect of his official capacity as an officer of the NYPD.

34.     At all times relevant hereto, FATIMA R. MONSOUR (Shield No. 24373) was an officer of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and within the scope of  P.O. Monsour's employment as such. and on information and belief was involved in the assault with use of excessive force upon, and arrest, unlawful search, detention and prosecution of Mr. Castillo.  On information and belief, P.O. Monsour obtained information from Lt. Alimena and P.O. Khan and using that information and alleging P.O. Monsour's own observations, prepared and signed a criminal complaint, which set forth criminal allegations against Mr. Castillo, which led to the initiation of the criminal proceedings against Mr. Castillo.  P.O. Monsour is being sued in P.O. Monsour's individual capacity and in respect of P.O. Monsour's official capacity as an officer of the NYPD.

35.     At all times relevant hereto, DARRIEN A. PHILLIPS (Shield No. 23806) was an officer of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and within the scope of his employment as such.  On information and belief, P.O. Phillips was involved in the assault with use of excessive force upon, and arrest, unlawful search, detention and prosecution of Mr. Rose.  On information and belief, P.O. Phillips obtained information from P.O. Cerimi and using that information, prepared and signed a criminal complaint, which set forth criminal allegations against Mr. Rose, which led to the initiation of the criminal proceedings against Mr. Rose.  P.O. Phillips is being sued in his individual capacity and in respect of his official capacity as an officer of the NYPD.

36.     At all times relevant hereto, SALI N. CERIMI (Shield No. 8390) was an officer of the NYPD, acting in the capacity of agent, servant and employee of Defendant City of New York, and

within the scope of his employment as such.  On information and belief, P.O. Cerimi was involved in the assault with use of excessive force upon, and arrest, unlawful search, detention and prosecution of Mr. Rose.  On information and belief, P.O. Cerimi provided information concerning an alleged assault and other allegations on himself by Mr. Rose, to P.O. Phillips, another Defendant herein. P.O. Phillips then used such information in a criminal complaint signed by P.O. Phillips which set forth criminal allegations, including assault, obstruction of governmental administration, resisting arrest and other criminal charges and an alleged harassment violation against Mr. Rose, which led to the initiation of the criminal proceedings against Mr. Rose. P.O. Cerimi is being sued in his individual capacity and in respect of his official capacity as an officer of the NYPD.

37.    JOHN AND JANE DOE 1 THROUGH 44 (each referred to as "J. Doe # __") were police officers, detectives or supervisors employed by the NYPD.  Plaintiff does not know the full names and/or real names and shield numbers of Defendants John and Jane Doe 1 through 44 or has only partial information with respect thereto insufficient to adequately identify such persons at this time.

38.    At all times relevant herein, Defendants John and Jane Doe 1 through 44 were acting as agents, servants and employees of Defendant City of New York and/or NYPD.  Defendants John and Jane Doe 1 through 44 are sued in their individual and official capacities.

39.    At all times relevant herein, all NYPD officers responsible for Plaintiffs' arrests, searches, transport and/or detention, including the named officers and John and Jane Doe Defendants, were acting under color of state law.

## JURISDICTION AND VENUE

40.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§ 1331, 1343 and 2201; 42 U.S.C. §§ 1983, 1985 and 1988; the First, Fourth, Sixth, Eighth and

Fourteenth Amendments to the Constitution of the United States.

41.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28

U.S.C. § 1367 because the federal and state law claims arise from a common nucleus of operative

facts.

42.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

part of the events that give rise to the claims occurred in the County of Kings, State of New York,

which is within the jurisdiction of this Court.

43.    Plaintiffs have joined together in this action, pursuant to Fed. R. Civ. Procedure Section

20, concerning permissive joinder.  Plaintiffs are permitted to join together because their claims arise

from the same occurrence and involve common questions of law and fact.

## JURY DEMAND

44.    Plaintiffs demand a trial by jury in this action.

## CONDITIONS PRECEDENT

45.    To the extent required under N.Y. GMU. Law § 50-e, each Plaintiff filed a timely notice

of claim against the City of New York in this matter on July 23, 2024, by filing a Personal Injury

Claim form at the New York City Comptroller's Office.

46.    An examination of Mr. Castillo pursuant to New York General Municipal Law § 50-h,

was held on December 11, 2024.

47.    An examination of Mr. Downie pursuant to New York General Municipal Law § 50-h,

was held on December 16, 2024.

48.     An examination of Mr. Guerrero pursuant to New York General Municipal Law § 50-h, was held on December 11, 2024.

49.     An examination of Mr. Moses pursuant to New York General Municipal Law § 50-h, was held on December 11, 2024.

50.     An examination of Mr. Rose pursuant to New York General Municipal Law § 50-h, was held on December 16, 2024.

51.     Pursuant to the requirements of N.Y. C.P.L.R. § 217(a), this Complaint is timely because it was filed within one year and ninety days of the alleged unlawful incidents.

52.     Therefore, plaintiff has satisfied all conditions precedent to the filing of this Complaint, or to the extent any conditions precedent are not satisfied, they are excused.

## STATEMENT OF FACTS

53.     Plaintiffs repeat and reallege all facts recited in the Preliminary Statement, Paragraphs 1 through 19 above, which are common to all Plaintiffs.

54.     Plaintiffs personally observed the events at the Funeral Home, which were chaotic – to say the least.

55.     Plaintiffs observed police officers from the NYPD rushing the Funeral Home and pushing people on the ground or against walls, including pushing women to the floor and pushing people onto each other, while aggressively shouting and cursing at the attendees at the viewing.

56.     The unlawful entry into the Funeral Home and the unlawful events that occurred in connection with Plaintiffs' arrests and other unlawful actions perpetrated upon Plaintiffs were racially motivated.

57.     On information and belief, if there had been large crowd of principally White individuals gathered at a Funeral Home, the NYPD would not have taken the type of actions taken by the NYPD in this case.

58.     The most compelling evidence that the actions taken were improper is that even for felony counts, the charges were dismissed.

59.     The actions of the NYPD were egregious because of the intrusive nature on what is a sacred event – the viewing of a deceased.  Horrifyingly, on information and belief, some of the unruly and unlawful police activity was even taking place inside the viewing room where Mr. Felix's casket was on view.

60.     On information and belief, the City of New York is well aware of its obligations under federal, state and local law not to discriminate against persons of color, and yet, the practice still persists.

61.     On information and belief, there have been multiple lawsuits brought against the City for civil rights violations, bias in policing, false arrest, excessive force, malicious prosecution and other claims that were racially motivated.

62.     On information and belief, the City fails to offer adequate training on policies or procedures to govern situations where large crowds of people are gathering and fails to require compliance with and fully implement written policies that it maintains or was required to develop and guidelines concerning the same.

63.     With deliberate indifference to the rights of citizens to be free from discrimination in law enforcement, the City, by and through its agent, the NYPD, has encouraged, tolerated, ratified, and acquiesced to discrimination by: failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from discrimination in law enforcement; failing to punish

race-based discrimination; and by tolerating discrimination among the police force and in police decisions.

64.    It is the longstanding, widespread, deliberately indifferent custom, habit, practice and/or policy of the City of New York to permit its agents and agencies to use race as a motivating factor in decisions and other actions, as well as to fail to supervise and to train its agents regarding the rights of citizens to be free from such racial discrimination in policing communities.

65.    The City, by and through its agent, the NYPD, knew or should have known that its actions and/or inactions created an unreasonable risk of causing these Plaintiffs – all of which are Black -- to be physically injured and to suffer greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than would be expected to experience than their White-counterparts.

66.    As a result of the wrongful conduct of Defendants, Plaintiffs experienced racial discrimination in policing, physical and emotional injury and property damage.

67.    The City, by and through its agency, the NYPD, engaged in wrongful and intentional discrimination against Plaintiffs on the basis of race in effecting its policing activity.  Such unlawful bias and discrimination is reflected by such Defendant's failure to train employees and agents and promulgate policies of non-bias and non-discrimination against persons of color.

68.    Plaintiffs, as residents of New York City expect to have future encounters with NYPD officers, whether by choice or necessity.

69.    Plaintiffs are deterred from seeking the aid or protection of the NYPD due to the bias and discrimination they expect to face if they do so.

70.    Defendants intentionally discriminated against Plaintiffs and acted with deliberate indifference to their fundamental constitutional and civil rights, causing them to endure physical injury, humiliation, shame, fear, anxiety and emotional distress, to miss the funeral, to lose the

comfort of others and to be able to comfort others, to pray with others and to congregate and assemble to mourn the death of Mr. Felix.

71.    Plaintiffs were deprived of their liberty; suffered emotional distress and mental anguish; were unlawfully seized and searched; suffered fear, pain, bodily injury, anxiety, embarrassment and humiliation; experienced damage to property; and were deprived of their important rights under federal, state and local law.

72.    During all of the events described herein, Defendant Police Officers acted maliciously and with intent to injure Plaintiffs.

73.    As a direct and proximate result of the acts of Defendants, Plaintiffs suffered the following injuries and damages:

• Violation of Plaintiffs' right, pursuant to the Fourth Amendment of the United States Constitution, as well as pursuant to New York State Constitution Article 1, Section 12, to be free from unreasonable searches and seizures;

•    Violation of Plaintiffs' rights of free speech, religion and assembly, pursuant to Article 1 Sections 3, 8 and 9, of the New York State Constitution and the First Amendment to the United States Constitution;

•    Violation of Plaintiffs' right to Due Process of Law pursuant to Article 1, Section 6 of the New York State Constitution and the Fourteenth Amendment to the United States Constitution;

•    Violation of Plaintiffs' right to be free from Cruel and Unusual Punishment pursuant to the Eighth Amendment of the United States Constitution and pursuant to Article 1, Section 5 of the New York State Constitution;

•    Violation of Plaintiffs' right to fair legal process pursuant to the Sixth Amendment of the United States Constitution;

• Violation of Plaintiffs' right to be treated equally pursuant to the Fourteenth Amendment to the U.S. Constitution and Article 1 Section 11 of the New York State Constitution;

• Violation of New York City Administrative Code Section 14-151 which prohibits bias-based profiling in policing which violated Plaintiffs' rights;

• Pain, suffering and physical injury;

• Emotional trauma and suffering, including fear, embarrassment, humiliation, injury to reputation, emotional distress, frustration, extreme inconvenience and anxiety;

• Loss of liberty; and

• Property damage.

74. All of these injuries and damages were the direct and proximate result of the actions of the City and the Police Officer Defendants.

75. When the NYPD barged into the Funeral Home and disrupted the lawful activities of the mourners assembled there, they were acting in concert to deprive Plaintiffs of important rights and to violate their rights under federal, state and local law.

76. Each of the Plaintiffs was arrested, and the circumstances surrounding each of the Plaintiffs' arrests and individual damages arising out of the Funeral Home incident are detailed below.

**Plaintiff Gregory Castillo**

77. Mr. Castillo is currently a 31-year old Black male. Mr. Castillo graduated high school and has tried to take some college courses. At the time of the incident, he was working as a tow-truck driver for Next Level; at that time, he had that job for approximately 3 years.

78. Mr. Castillo arrived at the Funeral Home at approximately 6:00 p.m. on April 26, 2024.

79.    Mr. Castillo was pushed by NYPD officers, slammed to the floor inside of the Funeral Home; placed under arrest for alleged violations of law allegedly occurring at or about 8:00 p.m. and 8:48 p.m.; handcuffed; dragged to a patrol car, when he was, on information and belief, not walking fast enough for the officers' liking; and transported to the 75th Precinct for processing.

80.    At the precinct, Mr. Castillo was fingerprinted and processed, transported to Central Booking and later arraigned at Criminal Court at 120 Schermerhorn, Brooklyn, NY.  Mr. Castillo was released from custody at approximately 1:50 a.m. on April 27, 2024.

81.    Mr. Castillo suffered significant distress as a result of the arrest, search and detention that resulted in him missing the funeral and burial of Mr. Felix, which occurred the following day. Mr. Castillo was unable to pray with or seek comfort from (or comfort) others who were also in mourning as a result of being subjected to an illegal arrest and detention by the NYPD and was further damaged by the prosecution of unfounded claims against him.

82.    Mr. Castillo was subjected to unwarranted physical abuse by the NYPD and suffered physical injury to his head (bump and bleeding), both wrists and back.  He was choked, punched repeatedly and stepped on by NYPD officers; on information and belief, the officers involved in the physical assault and arrest included Lt. Alimena, P.O. Khan and P.O. Monsour and included JJ Doe # 1 and J. Joe # 2.

83.    Mr. Castillo was searched by J. Doe # 3.

84.    Mr. Castillo was fingerprinted by J. Doe # 4.

85.    Additional officers (John and Jane Doe # 28 through 44), on information and belief, observed, the unlawful assault with excessive force perpetrated upon Mr. Castillo and his unlawful arrest and failed to intervene or otherwise were later involved in the transportation, processing/booking and other unlawful detention of Mr. Castillo.

86.    Mr. Castillo was prosecuted under Docket No.: CR-017305-24KN with violations of the following provisions of the New York Penal Law alleged: PL120.05, PL 120.00, PL 195.05, PL 170.20.

87.    Mr. Castillo repeats and realleges the allegations against Lt. Alimeda, P.O. Khan and P.O. Monsour in their entirety as set forth in Paragraphs 30, 31 and 34 above for their involvement in the unlawful activities perpetrated against Mr. Castillo.

88.    The criminal charges were dismissed and sealed in their entirety on July 12, 2024.

89.    Mr. Castillo spent approximately 31 hours in custody, and he spent approximately 4 hours attending 1 appearance following arraignment before his case was dismissed and sealed.

90.    As of the date of Mr. Castillo's 50-h hearing, Mr. Castillo reported that his back hurt, although his wrists had stopped swelling and hurting approximately 2 months earlier.

91.    Mr. Castillo asked for medical attention during his time in custody, but he was discouraged from seeking medical attention, on information and belief, by J. Doe #3 and told it would prolong the process.  He used his shirt to try to clean up the blood coming from his head injury.

92.    Mr. Castillo experienced extreme pain in his body as a result of the incident; as of the filing of this Complaint, he still experiences pain in his wrists.

93.    Mr. Castillo also suffered emotional injury and mental distress from witnessing the events perpetrated upon others, as well as the experience of being injured directly.

94.    Since the incident, Mr. Castillo has experienced a number of symptoms.  He reports feeling very emotional; he will suddenly break into tears.  He indicates that he fears the police more than before; he feels he is being targeted and that makes him scared.  He has trouble sleeping. He had been eating more than he normally did following the incident and had gained weight.  He only began losing the weight he had gained in 2024 in 2025.  He experiences constant flashbacks.

He seems to be experiencing anxiety, depression and what may be described as some form of PTSD.

95.    Mr. Castillo's property was lost or damaged during the incident, namely Prada footwear (value $850.00); custom articles of clothing (hoody value $150.00 to $200.00; hat $150.00); Cartier-framed prescription glasses (value $1,800.00).

96.    Mr. Castillo lost time at work.  As of the date of the 50-h hearing, Mr. Castillo had not worked since the incident (approximately 8 months) due to the incident, but he has since resumed his tow-service activities with Next Level.

**Plaintiff Akeim Downie**

97.    Mr. Downie is currently a 29-year-old Black male.  His highest level of education is 11th Grade.  Mr. Downie is self-employed as a self-employed production specialist (*e.g.,* setting up events, building stages, lighting, etc.).

98.    Mr. Downie arrived at the Funeral Home at approximately 3:00 p.m. on April 26, 2024.  He was arrested on April 26, 2024, a few blocks away from the Funeral Home; although the Summons he was issued indicated an arrest time of approximately 11:20 p.m., Mr. Downie believes he was arrested and detained several hours earlier.

99.    Mr. Downie was transported to the 75th Precinct, fingerprinted and processed and was released with what is known as a Summons at approximately 6:00 a.m. on April 27, 2024.

100.    Mr. Downie was prosecuted under Docket No. 2024SK011964; the charge alleged was a violation of PL 240.20 (disorderly conduct, which is a violation and not technically a crime).

101.    Mr. Downie spent approximately 11 hours in custody.

102.    Mr. Downie repeats and realleges the allegations against P.O. McFarland in their entirety as set forth in Paragraph 33 above for his involvement in the unlawful activities perpetrated upon Mr. Downie.

103.   Mr. Downie originally believed that his case was not prosecuted.  Indeed, he believed he had missed the court appearance and went both to the Precinct and the courthouse to find out whether he had an outstanding warrant on the Summons.  He learned that he did not.  He does not believe that he ever personally appeared for a court appearance on that docket; the charges were dismissed against him in the interest of justice on May 16, 2024.

104.   Mr. Downie had a very strong personal connection to the deceased, Mr. Felix.  They were childhood friends, and Mr. Downie described him as his "best friend."

105.   Mr. Downie was with Mr. Felix when Mr. Felix was killed in a drive-by shooting; he watched him die.  Mr. Downie was also injured in the incident (shot).   Both were victims and not involved in any unlawful activities in connection with that unfortunate shooting.

106.   Mr. Downie suffered significant distress as a result of the arrest, search and detention that resulted in him missing the funeral and burial, which occurred the following day.  Mr. Downie was unable to pray with or seek comfort from (or comfort) others who were also in mourning as a result of being subjected to an illegal arrest and detention by the NYPD and was further damaged by the prosecution of unfounded claims against him.

107.   Mr. Downie was subjected to unwarranted physical abuse by the NYPD, including having his wrists handcuffed to the point where they were hurting for weeks because they were tight; the handcuffs were kept on the entire time he was in custody, including when he was in the cell with others, which made him very anxious given the safety risk such a situation posed.

108.   On information and belief, the officers involved in the physical assault and arrest and arrest included P.O. McFarland and included J. Doe #5, J. Doe # 6 and J. Doe # 7

109.   Mr. Downie was searched by J. Doe # 8.

110.   Mr. Moses was fingerprinted by J. Doe # 9.

111.   Additional officers (John and Jane Doe # 28 through 44), on information and belief, observed, the unlawful assault with excessive force perpetrated upon Mr. Downie and his unlawful arrest and failed to intervene or otherwise were later involved in the transportation, processing/booking and other unlawful detention of Mr. Downie.

112.   Mr. Downie also suffered emotional injury and mental distress from witnessing the events perpetrated upon others, as well as the experience of being injured directly.  Mr. Downie, is still grieving.

113.   Since the incident, Mr. Downie has experienced the following symptoms: Feeling angry, loss of sleep, loss of appetite, nervousness, flashbacks of the incident, and other symptoms; there has been no formal diagnosis, but these symptoms might be described as symptoms of anxiety, depression and PTSD.

114.   Mr. Downie's property was damaged in the following respect: NYPD broke the screen on Mr. Downie's mobile telephone and the volume was disrupted, as well as notifications and screen functionality damaged.  The total dollar value of the Android phone is estimated to be $700.00.

115.   Mr. Downie alleged lost time at work.  Mr. Downie has suffered economic losses due to missing work.  The value of the lost time at work is approximately $400 for 2 days of lost self-employment.

**Plaintiff Jorge Guerrero**

116.   Mr. Guerrero is currently a 54-year old Black male.  His highest level of education is 2-years of college.  He has obtained minor-celebrity level fame as an original member of the Garufina Kids, a successful kid-group in New York with international acclaim (including in Honduras); his music is well-known in some musical circles.

117.  Mr. Guerrero arrived at the Funeral Home at approximately 6:40 p.m. on April 26, 2024.

118.  Mr. Guerrero was leaving the Funeral Home, having been instructed to disburse by the NYPD, and yet, he was stopped in front of his vehicle by NYPD officers and told by NYPD officers not to get in the vehicle.

119.  Mr. Guerrero was arrested on April 26, 2024, based on charges that were alleged to have occurred between 7:00 p.m. and 9:30 p.m. on April 26, 2024, and transported to the 75th Precinct, fingerprinted and processed, transported to Central Booking and arraigned at Kings County Criminal Court at 120 Schermerhorn on April 27, 2024, on Docket No.: CR-017290-24KN. He was charged with crimes pursuant to PL 195.05 and PL 205.30.

120.  Mr. Guerrero spent approximately 24-hours in custody.

121.   Mr. Guerrero repeats and realleges the allegations against P.O. Grullon as set forth in Paragraphs 32 and repeats and realleges the allegations against P.O. Monsour, except for specific allegations pertaining to Mr. Castillo's claims, as set forth in Paragraph 34 above for their involvement in the unlawful activities perpetrated against Mr. Guerrero.

122.  On information and belief, P.O. Monsour was also involved in the assault upon and arrest of Mr. Guerrero.

123.  P.O. Monsour shoved Mr. Guerrero as his back was turned, while he was calmly walking toward his vehicle in an attempt to separate from the madness that was all around him.

124.  P.O. Monsour took a fighting stance against Mr. Guerrero, further antagonized him and shoved him again over the arms of P.O. Grullon.

125.  Mr. Guerrero attended several appearances following the arraignment before his case was ultimately dismissed (total time spent at court was approximately 9 hours) on July 30, 2024.

126.   Mr. Guerrero suffered significant distress as a result of the arrest and detention that resulted in him missing the funeral and burial, which occurred the following day for Mr. Felix.  In addition, Mr. Guerrero missed his cousin's bereavement activities, as he had plans to later go to the Bronx for another bereavement activity on April 26, 2024, as a result of his cousin's passing.

127.   Mr. Guerrero was unable to pray with and seek comfort from (or comfort) others who were also mourning the death of Mr. Felix, as a result of being subjected to an illegal arrest and detention by the NYPD and was further damaged by the prosecution of unfounded claims against him.

128.   Mr. Guerrero was also unable to pray with and seek comfort from (or comfort) others who were also mourning the death of his cousin, as a result of being subjected to an illegal arrest and detention by the NYPD.

129.   Mr. Guerrero was subjected to unwarranted physical abuse by the NYPD, including being roughed up when NYPD officers threw him against his car.  On information and belief, the officers involved in the physical assault and arrest included P.O. Grullon, P.O. Monsour and included J. Doe # 10.

130.   Mr. Guerrero was searched by J. Doe # 11

131.   Mr. Guerrero was fingerprinted by J. Doe # 12.

132.   Additional officers (John and Jane Doe # 28 through 44), on information and belief, observed, the unlawful assault with excessive force perpetrated upon Mr. Guerrero and his unlawful arrest and failed to intervene or otherwise were later involved in the transportation, processing/booking and other unlawful detention of Mr. Guerrero.

133.   Mr. Guerero reported having pain in his back and left arm.

134.   Mr. Guerrero also suffered emotional injury and mental distress from witnessing the events perpetrated upon others, as well as the experience of being injured directly.  For him the incident was traumatizing and was one of the worst days of his life.

135.   On information and belief, Mr. Guerrero filed a complaint with the CCRB regarding this incident, but on information and belief, no one from CCRB contacted him to follow-up on the complaint made.

136.   Since the incident, Mr. Guerrero has experienced the following symptoms: over-eating, problems sleeping, issues with driving due to the fear of being pulled over by police, feeling anxious and depressed, and experiencing flashbacks from the chaos at the Funeral Home and unlawful activities perpetrated upon Mr. Guerrero.

137.   Mr. Guerrero's property was damaged during the incident.  His 18K Italian-gold chain (value $4,500.00) was lost or never returned.

138.   Mr. Guerrero lost time at work.  Mr. Guerrero is a self-employed entertainer and was to perform at a concert.  Although his weekly wages average approximately $800.00 per week, he is a gig-worker, and he had a specific gig that was missed because of this incident.  He lost a specific performance opportunity for a particular 2-day performance where he would have otherwise received approximately $3,800.00 and generally was unable to perform as much for a period of time after the incident because of the trauma he experienced.

**Plaintiff Larry Moses, Jr.**

139.   Mr. Moses is currently a 41-year old Black male.  He received his GED in 2021 and is attending Grand Canyon University (on-line degree program).

140.   Mr. Moses arrived at the Funeral Home at approximately 3:30 p.m. on April 26, 2024. He was arrested on the street, approximately 10 blocks away from the Funeral Home, having already disbursed at the direction of the NYPD.  Although the Summons issued to Mr. Moses

indicated that the arrest occurred at approximately 11:30 p.m., Mr. Moses believes that the arrest occurred earlier at approximately 10:00 p.m.

141.   Mr. Moses was transported to the 75th Precinct, fingerprinted and processed and was released with a Summons at approximately 5:00 a.m. on April 27, 2024.   The total time in custody was approximately 7 hours.

142.   Mr. Moses was told by J. Doe #8 (on information and belief, based on the color of the shirt worn, an officer with the rank of Sargeant) that he was being arrested for jay walking. However, Mr. Moses was prosecuted under Docket No.: 2024SK011973 with a charge of PL 240.20 (disorderly conduct), which is a violation and not technically a crime.

143.   Mr.   Moses repeats and realleges the allegations against P.O. McFarland in their entirety as set forth in Paragraph 33 above for his involvement in the unlawful activities perpetrated upon Mr. Moses.

144.   Mr. Moses made two court appearances (total time at court was approximately 8 hours). Ultimately, the case was dismissed in its entirety on May 29, 2024.

145.   Mr. Moses suffered significant distress as a result of the arrest, strip search and detention that resulted in him missing the funeral and burial, which occurred the following day. Mr. Moses was unable to pray with or seek comfort from (or comfort) others who were also in mourning as a result of being subjected to an illegal arrest and detention by the NYPD and was further damaged by the prosecution of unfounded claims against him.

146.   Mr. Moses was subjected to unwarranted physical abuse by the NYPD, including being slammed to the floor, injuring his face, busting his lip open and having his back and neck injured.   On information and belief, the officers involved in the physical assault and arrest included P.O. McFarland and included J. Doe # 13, J. Doe #14, J. Doe #15, and J. Doe #16.

147.   Mr. Moses was strip searched by J. Doe # 17.

148.   Mr. Moses was fingerprinted by J. Doe # 18.

149.   Additional officers (John and Jane Doe # 28 through 44), on information and belief, observed, the unlawful assault with excessive force perpetrated upon Mr. Moses and his unlawful arrest and failed to intervene or otherwise were later involved in the transportation, processing/booking and other unlawful detention of Mr. Moses.

150.   Mr. Moses had asked for medical attention at the 75th Precinct but was denied assistance by J. Doe #13, particularly for his busted lip.

151.   Mr. Moses also suffered emotional injury and mental distress from witnessing the events perpetrated upon others, as well as the experience of being injured directly.  He indicated the police instilled a profound sense of fear in him.

152.   Since the incident, Mr. Moses has experienced the following symptoms: sadness, anger, anxiety, depression and flashbacks relating to the incident at the Funeral Home and the unlawful activities perpetrated upon him.

153.   Initially after the incident, he experienced loss of appetite, but in February of 2025, his appetite improved.

154.   In addition, initially after the incident he experienced jumpiness when seeing police officers; his jumpiness has improved, but he is more nervous when he is alone and sees a police officer than when he is with others.

155.   Mr. Moses has been seeking periodic counseling for these emotional/psychological issues to help him deal with anxiety associated with police interactions, as well as with dealing with the fact that he missed the funeral and burial of Mr. Felix.  His negative feelings are often triggered when he spends time with the Felix family with whom he maintains a relationship.

156.   Mr. Moses' property was damaged during the incident.  His 14K gold chain with an emblem (cross) (value $3,000.00) was lost or never returned, as well as an iphone 15 that was

brand new (value $1,800.00). Further, an original car key with electronic features for his vehicle was lost or never returned (value $450.00). In addition, he had clothes lost or never returned, including a Givenchy sweater (value $800.00) and a fitted hat (value $50.00). Finally, as a result of the incident, he had to leave his car parked. The license plate on his car was stolen while the car was parked overnight, and someone racked up many speeding tickets which were charged to Mr. Moses based on his license plate, resulting the cost of replacing his license plate (approximately $230.00), as well as the unexpected costs assessed due to the imposition of more than 10 tickets against such plate.

157.    Mr. Moses lost time at work. He missed 2 days while working with the New York City School Support Services, where he performed cleaning services. He later left this position in June 2024 because the injuries to his back made it hard for him to continue working in his primary field, which required manual labor and lifting weights over 50 pounds. He applied for unemployment and was willing and able to work; he was then applying for remote work in order to avoid the physicality of the cleaning field.

**Plaintiff Aaron Rose**

158.    Mr. Rose is currently a 40-year old Black male. He completed his formal education through the 11th Grade and is a technician (auto mechanic).

159.    Mr. Rose arrived at the Funeral Home somewhere between and 5:30 and 6:30 p.m. on April 26, 2024 He was arrested across the street from the Funeral Home, transported to the 75th Precinct, fingerprinted and processed and transported to Central Booking, spending approximately 31 hours in custody before being released ROR after arraignment.

160.    Mr. Rose was prosecuted under Docket No. CR-017306-24KN; he was charged with a number of crimes alleged to have occurred at approximately 8:00 p.m. on April 26, 2024,

pursuant to PL 120.05, PL 120.00 PL 195.05, PL 205.30, and PL110-120.00, and also charged with a violation of PL 240.26 (harassment which is a violation and not a crime).

161.    Mr. Rose repeats and realleges the allegations against P.O. Phillips and P.O. Cerimi in their entirety as set forth in Paragraphs 35 and 36 above for their involvement in the unlawful activities perpetrated upon Mr. Rose.

162.    After 1 appearance following the arraignment (total time at court was approximately 4 hours), his case was dismissed in its entirety on July 12, 2024.

163.    Mr. Rose suffered significant distress as a result of the arrest, search and detention that resulted in him missing the funeral and burial, which occurred the following day.  Mr. Rose was unable to pray with or seek comfort from (or comfort) others who were also in mourning as a result of being subjected to an illegal arrest and detention by the NYPD and was further damaged by the prosecution of unfounded claims against him.

164.    Mr. Rose was subjected to unwarranted physical abuse by the NYPD, including being kicked, punched and slammed to the ground more than once by NYPD officers.  Mr. Rose stands approximately 6'1" tall and weighed approximately 220 pounds at the time; a bunch of the officers took him to the ground by pulling him off the steps of the Funeral Home.  They threw him against a wall, and he wound up in the bushes, where he blacked out.  He then went across the street, and still NYPD officers followed him, eventually kicking and punching him in the face again.

165.    On information and belief, the officers involved in the physical assault and arrest of Mr. Rose included P.O. Phillips and P.O. Cerimi, as well as J. Doe #19, J. Doe #20, J. Doe #21, J. Doe #22, J. Doe #23, J. Doe #24 and J. Doe #25.

166.    Mr. Rose was searched by J. Doe # 26.

167.    Mr. Rose was fingerprinted by J. Doe # 27.

168.    Additional officers (John and Jane Doe # 28 through 44), on information and belief, observed, the unlawful assault with excessive force perpetrated upon Mr. Rose and his unlawful arrest and failed to intervene or otherwise were later involved in the transportation, processing/booking and other unlawful detention of Mr. Rose.

169.    Mr. Rose's right thumb was very swollen, where he could not move it and presumed it to be broken.  Mr. Rose also had injuries to his arm, leg, head and face; he also suffered pain in his back

170.    Mr. Rose received treatment at the 75th Precinct by EMT's; he was told to use an ice-pack as needed.  He was not transported to a hospital because he did not want to delay his processing.

171.    Mr. Rose also suffered emotional injury and mental distress from witnessing the events perpetrated upon others, as well as the experience of being injured directly.  Post-incident, Mr. Rose has complained of just not feeling the same way he used to and feeling emotionally damaged and torn down.

172.    Since the incident, Mr. Rose has been depressed and aggravated and has experienced the following symptoms: significant stress, feelings of being agitated and aggravated, trouble sleeping, headaches as a result of the head trauma he experienced during the incident, PTSD-style flashbacks, and over-eating to try to self-soothe resulting in weight gain.

173.    Mr. Rose's property was damaged during the incident; his Air Jordans (value $300.00) and his hoodie (value $120.00) were ripped up during the incident.

174.    Mr. Rose lost time at work.  Mr. Rose missed 3 days of work.

**FIRST CAUSE OF ACTION**
**Deprivation of Federal Civil Rights under the United**
**States Constitution and 42 U.S.C. §§ 1981 and 1983**

175.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

176.   By their conduct and actions in unlawfully detaining, searching, arresting, imprisoning Plaintiffs without probable cause or reasonable suspicion and in fabricating evidence against Plaintiffs, Lt Alimeda, P.O. Khan, P.O. Grullon, P.O. McFarland, P.O. Monsour, P.O. Phillips, P.O. Cerimi, and J. Doe #1 through #27, acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to or in reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, including its First, Fourth and Fourteenth Amendments.

177.   By their conduct and actions in failing to intercede on behalf of Plaintiffs and protect them from the unjustified and unconstitutional treatment they received at the hands of the above identified Police Officer Defendants or otherwise assisting such officers in the transportation, processing/booking and other unlawful detention of the Plaintiffs, John and Jane Doe #28 through #44, acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, including its First, Fourth and Fourteenth Amendments.

178.   As a result of the foregoing, Plaintiffs were deprived by the City and the Police Officer Defendants of their rights of free speech, to assemble and to pray and their right of liberty; suffered emotional distress, great anxiety and humiliation, pain, physical injury, fear, damage to their reputations; and were otherwise damaged and injured.

## SECOND CAUSE OF ACTION
### Liability for New York State Constitutional Violations
### under Article I §§ 1. 3, 5, 6, 8, 11 & 12

179.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

180.  By reason of the foregoing, and by unlawfully detaining, searching, arresting, and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving them of due process and equal protection of laws, the Police Officer Defendants deprived Plaintiffs of rights, remedies, privileges and immunities guaranteed to every New Yorker by Article 1§ 1 (rights of the New York State Constitution for all citizens), Article I §3 (guaranteeing freedom of worship/religious liberty), Article I §5 (prohibiting cruel and unusual punishments), Article I §6 (providing for due process), Article I §8 (guaranteeing freedom of speech, expression and association), Article I §11 (prohibiting discrimination in civil rights and providing for equal protection of laws) and Article I §12 (prohibiting unreasonable searches and seizures) of the New York State Constitution.

181.  In addition, Police Officer Defendants conspired among themselves and conspired with other individuals to deprive Plaintiffs of their rights secured under Article I §§ 1, 3, 5, 6, 8, 11 and 12 of the New York State Constitution and took numerous overt steps in furtherance of such conspiracy, as set forth herein.

182.  Police Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents or employees of the NYPD, an agency of the City of New York.

183.  Alternatively, Police Officer Defendants' acts were beyond the scope of their jurisdiction, without any authority of law and were in abuse of their powers.  Police Officer Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their rights as secured by Article I §§ 1, 3, 5, 6, 8, 11 and 12 of the New York State Constitution.

184.  The disparate treatment of Black and Hispanic people, including the Black Plaintiffs herein, have resulted from such discrimination in policing.

185.  On information and belief, if the NYPD had seen a group of White people gathered at a funeral home, they would not have acted as they did in this case.

186.  Defendant City and, its officers, agents, servants and employees, including the Police Officer Defendants, were responsible for the deprivation of Plaintiffs' state constitutional rights.

**THIRD CAUSE OF ACTION**
**False Arrest and Unlawful Imprisonment**

187.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

188.  Police Officer Defendants subjected Plaintiffs to false arrest, false imprisonment and deprivation of liberty without probable cause or reasonable suspicion.

189.  Police Officer Defendants deprived Plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to Plaintiffs under 42 U.S.C. §§ 1983 and 1985, the U.S. Constitution and New York State Constitution.

190.  By their conduct, as described herein, Police Officer Defendants are liable to Plaintiffs for falsely arresting and unlawfully imprisoning Plaintiffs.

191.  Plaintiffs were conscious of their confinement. Plaintiffs did not consent to their confinement.  Plaintiffs' confinement was not otherwise privileged.

192.  Defendant City, by and through its agency NYPD, as an employer of Police Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

193.  As a direct and proximate result of the false arrest and unlawful imprisonment described herein, each of the Plaintiffs, respectively, was injured.

## FOURTH CAUSE OF ACTION
### Deprivation of Federal Civil Rights under 42 U.S.C. § 1985

194.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

195.  In an effort to find fault to use against the Plaintiffs, Police Officer Defendants conspired among themselves, and conspired with others to deprive plaintiffs of their civil rights under 42 U.S.C. §1983 and their constitutional rights pursuant to the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and took numerous overt steps in furtherance of such conspiracy, as set forth herein.

196.  Thus, Police Officer Defendants engaged in a conspiracy designed to deprive Plaintiffs of their constitutional and federal rights in violation of U.S.C. §1985.

197.  As a direct and proximate result of the abuse of authority detailed above, Plaintiffs sustained the damages stated in this Complaint.

## FIFTH CAUSE OF ACTION
### Falsification of Evidence under 42 U.S.C. § 1983

198.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

199.  Police Officer Defendants are liable to Plaintiffs because they intentionally conspired to fabricate evidence against Plaintiffs, depriving Plaintiffs of liberty without due process of law.

200.  Furthermore, Lt. Alimena, P.O. Khan, P.O. Grullon, P.O. McFarland, P.O. Monsour, P.O. Phillips and P.O. Cerimi violated the law by making false statements, by providing information used in the preparation of, by drafting and/or by signing sworn criminal court complaints and false police reports.

201.  Furthermore, the aforementioned Police Officer Defendants violated the law by manipulating evidence to attempt to obtain a prosecution and unjust conviction, while performing the function of investigators.

202.   The aforementioned Police Officer Defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that individuals who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and that this is redressable in an action for damages under 42 U.S.C. § 1983.

203.   The aforementioned Police Officer Defendants are also liable to Plaintiffs because they intentionally created false information likely to influence a fact finder's or jury's decision by, *inter alia*, providing information to others that would be used in creating false reports that would be provided to prosecutors, forwarding false information to prosecutors, drafting and signing sworn criminal court complaints and police reports, omitting and/or manipulating evidence, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating Plaintiffs' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

204.   As a direct and proximate result of the abuse of authority detailed above, Plaintiffs sustained the damages stated in this Complaint.

### SIXTH CAUSE OF ACTION
### Malicious Prosecution under 42 U.S.C. § 1983

205.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

206.   Each and every one of the Police Officer Defendants, by and through their acts or failures to act, caused Plaintiffs to be prosecuted without any probable cause until the charges were dismissed.

207.   Mr. Castillo's charges were dismissed on  July 12, 2024.

208.   Mr. Downie's charges were dismissed on May 15, 2024.

209.   Mr. Guerrero's charges were dismissed on July 30, 2024.

210.   Mr. Moses' charges were dismissed on May 29, 2024.

211.  Mr. Rose's charges were dismissed on July 12, 2024.

212.  By their conduct, as described herein, and acting under color of state law, Police Officer Defendants are liable to Plaintiffs under 42 U.S.C. § 1983 for the violation of their constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

213.  Police Officer Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.  The prosecution by Police Officer Defendants of Plaintiffs constituted malicious prosecution in that there was no basis for the Plaintiffs' arrests; yet such Police Officer Defendants continued with the prosecution, which was resolved in each of the Plaintiffs' favor.

214.  As a direct and proximate result of Police Officer Defendants' unlawful actions, each of the Plaintiffs have suffered damages, including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, loss of reputation, property damage and other damages as stated herein, respectively,

### SEVENTH CLAIM
**State Law Malicious Prosecution**

215.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

216.  By their conduct, as described herein, Police Officer Defendants and the City are liable to Plaintiffs for having committed malicious prosecution under the laws of the State of New York.

217.  Defendants maliciously commenced criminal proceedings against Plaintiffs, charging them with various provisions of New York Penal Law ranging from mere violations to felonies, as indicated above for each of the respective Plaintiffs herein.

218.    Defendants falsely and without probable cause charged Plaintiffs with violations of the laws of the State of New York.

219.   The commencement and continuation of the criminal proceedings against Plaintiffs was malicious and without probable cause. Ultimately, all charges were terminated in each of the Plaintiffs' favor.

220.   The City and their officers, agents, servants and employees, including the Police Officer Defendants, were responsible for the malicious prosecution of Plaintiffs.

221.   Defendant City, as an employer of the individual Police Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

222.   As a direct and proximate result of the misconduct and abuse of authority stated above, each of the Plaintiffs, respectively, sustained the damages alleged herein.

## EIGHTH CAUSE OF ACTION
### Failure to Intervene under 42 U.S.C. $ 1983

223.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

224.   Each and every Police Officer Defendant had an affirmative duty to intervene on behalf of Plaintiffs, whose constitutional rights were being violated in their presence by other Police Officer Defendants.

225.   As between and among the various police officers that were involved in the activities described herein, all Police Officer Defendants failed to intervene to prevent the unlawful conduct of other officers as described herein.

226.   The failures of the Police Officer Defendants to intervene violated Plaintiffs' protected rights and are actionable under 42 U.S.C. Section 1983.

227.   As a direct and proximate result of the abuse of authority detailed above, Plaintiffs sustained the damages stated.

## NINTH CAUSE OF ACTION
### Excessive Use of Force

228.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

229.   Lt. Alimena, P.O. Khan, P.O. Grullon, P.O. McFarland, P.O. Monsour, P.O. Phillips, P.O. Cerimi, J. Doe #1, J. Doe #2, J. Doe #5, J. Doe #6, J. Doe #7, J. Doe #10, J. Doe #13, J. Doe #14, J. Doe #15, J. Doe #16,, J. Doe #19, J. Doe #20, J. Doe #21, J. Doe #22, J. Doe #23, J. Doe #24 and J. Doe #25 Doe used force upon the Plaintiffs, respectively as detailed above in each of the specific factual recitations pertinent to such individual Plaintiffs, that was objectively unreasonable and excessive.

230.   Such Police Officer Defendants did not have an objective and/or reasonable basis to use any degree of force against Plaintiffs, since Plaintiffs were unarmed, compliant and did not resist arrest

231.   The specific Police Officer Defendants were responsible for any and all aggressive and violent acts that occurred at or around the Funeral Home in connection with this incident by direct participation in perpetrating such acts.

232.   Furthermore, all Defendant Police Officers, as between and among themselves, were responsible for failing to intervene to stop such unlawful actions which they observed being perpetrated by the aforementioned specific Police Officer Defendants.

233.   Accordingly, the identified Police Officer Defendants are liable to plaintiffs for using unreasonable and excessive force and all Defendant Police Officers are liable to Plaintiffs for failing to intervene to prevent such unlawful use of force, pursuant to 42 U.S.C. § 1983 and the Fourth and Eighth Amendments to the United States Constitution.

## TENTH CAUSE OF ACTION
### State Law Assault and Battery

234.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

235.  By their conduct, as described herein, Defendants are liable to plaintiff for having assaulted and battered each of them, respectively.

236.  Defendant City of New York, by and through its agency, NYPD, as employer of Lt. Alimena, P.O. Khan, P.O. Grullon, P.O. McFarland, P.O. Monsour, P.O. Phillips, P.O. Cerimi, J. Doe #1, J. Doe #2, J. Doe #5, J. Doe #6, J. Doe #7, J. Doe #10, J. Doe #13, J. Doe #14, J. Doe #15, J. Doe #16,, J. Doe #19, J. Doe #20, J. Doe #21, J. Doe #22, J. Doe #23, J. Doe #24 and J. Doe #25 Doe , is responsible for their wrongdoing under the doctrine of *respondeat superior*.

237.  As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiffs sustained the damages alleged herein.

## ELEVENTH CAUSE OF ACTION
### Negligent Hiring, Training and Retention

238.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

239.  Defendant City, by and through its agency, NYPD, owed a duty of care to Plaintiffs to prevent the conduct alleged, because under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to Plaintiffs or to those in a like situation would probably result from the foregoing conduct.

240.  Upon information and belief, all of the individual Police Officer Defendants were unfit and incompetent for their positions.

241.  Upon information and belief, Defendant City and its agency, the NYPD, knew or should have known through the exercise of reasonable diligence that the Police Officer Defendants were potentially dangerous or lacked the requisite skills necessary to perform their police functions without injury to the public, including to Plaintiffs.

242.  Upon information and belief, Defendant City's and the NYPD's negligence in screening, hiring, training, disciplining, and retaining these Police Officer Defendants proximately caused each of the Plaintiff's injuries, respectively.

243.  As a direct and proximate result of this unlawful conduct, each of the Plaintiffs sustained the damages alleged herein, respectively.

### TWELFTH CAUSE OF ACTION
### Negligence (Property Damage)

244.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

245.  Plaintiffs owned personal property that was damaged in the course of the unlawful conduct of the Police Officer Defendants as detailed herein with respect to each of the Plaintiffs. Such personal property was valuable to each of them, respectively.

246.  Police Officer Defendants owed a duty to Plaintiff to use reasonable care in respect of their respective property.

247.  Police Officer Defendants breached the duty of care, when they negligently damaged, lost or failed to preserve each of the Plaintiffs' property, as set forth herein with respect to each Plaintiff.

248.  Defendant City of New York, by and through its agency, NYPD, as employer of the individual Police Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

249.  Such negligence by Defendants was the actual and proximate cause of Plaintiffs' damages in respect of the lost or damaged property, respectively.  Each of the Plaintiffs suffered property damage for the value of the items so lost or damaged, respectively, as described herein.

### THIRTEENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

250.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

251.  By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, failing to prevent other Defendants from doing so, or causing an unlawful seizure and extended detention without due process, Police Officer Defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon Plaintiffs.

252.  The negligent infliction of emotional distress by these Police Officer Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

253.  The City and its agency, the NYPD, and each of their respective officers, agents, servants and employees were responsible for the negligent infliction of emotional distress upon Plaintiffs.

254.  Defendant City, by and through its agency, the NYPD, as employer of each of the individual Police Officer Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

255.  As a direct and proximate result of the misconduct and abuse of authority detailed above, each of the Plaintiffs, respectively, have sustained the damages alleged herein.

### FOURTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

256.  Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

257.  By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, failing to prevent other Defendants from doing so, or causing an unlawful seizure and extended detention without due process, Police Officer

Defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon Plaintiffs.

258.   The intentional infliction of emotional distress by these Police Officer Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

259.   The City and its agency, the NYPD, and each of their respective officers, agents, servants and employees were responsible for the intentional infliction of emotional distress upon Plaintiffs.

260.   Defendant City, by and through its agency the NYPD, as employer of each of the individual Police Officer Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

261.   As a direct and proximate result of the misconduct and abuse of authority detailed above, each of the Plaintiffs, respectively, have sustained the damages alleged herein.

### FIFTEENTH CAUSE OF ACTION
**Monell claim against Defendant City of New York under 42 U.S.C. §1983**

262.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

263.   On information and belief, all of the acts and omissions by Police Officer Defendants were carried out pursuant to overlapping customs, policies and/or practices of the City and its agency, the NYPD, which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, cooperation and under the supervisory authority of the City and its agency, the NYPD.

264.   On information and belief, the City and its agency, the NYPD have specific customs, policies, usages, practices, procedures and rules that govern interaction with crowds, whether under the guise of crowd control, protest or other methods of dealing with gatherings of civilians.

265.   Such customs, policies, usages, practices, procedures and rules are either inadequate to address the peaceful, lawful assembly of citizens of New York or are otherwise being violated pursuant to other customs, policies, usages, practices, procedures and rules by the City and its agency, the NYPD.

266.   On information and belief, there may be conflicting customs, policies, usages, practices, procedures and rules of the City and its agency the NYPD, particularly in respect of gatherings of people of color, that impede the ability to maintain order without violating Plaintiffs' rights under federal law, including, but not limited to, the following unconstitutional practices: arresting persons known to be innocent in order to meet productivity goals (*i.e.,* arrest quotas); falsifying and fabricating evidence; falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony in order to protect themselves and other officers and/or in order to meet said productivity goals; failing to supervise, train, instruct and discipline · police officers and encouraging their misconduct; discouraging police officers from reporting the corrupt or unlawful acts of other police officers; retaliating against officers who report police misconduct; and failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

267.   On information and belief, the recent agreement with the City to address protests has application to this situation.  Indeed, the NYPD has come under scrutiny for its policies concerning how it handles protests, and while this situation was not a protest at the outset, the intrusion of the police into the bereavement process at the Funeral Home, quickly devolved into a scene similar to out-of-control cops interacting with peaceful protestors.

268.   The acts complained of were carried out by Police Officer Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices,

procedures and rules of the City and its agency, the NYPD, all under the supervision of ranking officers of the NYPD.

269.   On information and belief, the existence of the aforesaid unconstitutional customs, policies, usages, practices, procedures and rules may be inferred from repeated occurrences of similar wrongful conduct, as documented in other civil rights cases filed against the City and analogous complaints filed against NYPD officers.

270.   On information and belief, the existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and the City, including, without limitation, the then current Police Commissioner.

271.   On information and belief, the actions of Police Officer Defendants resulted from and were undertaken pursuant to the above mentioned *de facto* policies and rules and/or well-settled and widespread customs, usages, and practices of Defendant City, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury (both oral and written) to cover-up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.

272.   On information and belief, officers of the NYPD have done so with the knowledge and approval of their supervisors, commanders and Police Commissioners, including the then-current Police Commissioner, who all tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("lAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers.

273.    On information and belief, the City, by and through its agency, the NYPD, encourages and fails to discipline officers for testifying and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians.

274.    All of the foregoing acts by Defendant City, by and through its agency the NYPD, deprived Plaintiffs of their federally protected rights, including the constitutional rights enumerated above.

275.    Defendant City knew or should have known that the acts alleged herein would deprive Plaintiffs of their rights under the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

276.    Defendant City is directly liable and responsible for the acts of Police Officer Defendants because it repeatedly and knowingly failed to properly supervise, train instruct and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the City and the NYPD and to require compliance with the Constitution of the United States.

277.    Despite knowledge of such unlawful *de facto* customs, policies, usages, practices, procedures, and rules, these supervisory and policy-making officers and officials of the NYPD and the City, including the then current Police Commissioner, did not take steps to terminate these policies, usages, practices procedures and rules or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in New York including Plaintiffs herein.

278.  The aforementioned customs, policies, usages, practices and/or rules of failing to supervise, train, instruct and discipline police officers of the City, by and through its agency, the NYPD, are evidenced by, *inter alia*, the police misconduct detailed herein.

279.  Specifically, pursuant to the aforementioned customs, policies, usages, practices and/or rules of the City, by and through its agency, the NYPD, the arresting officers were empowered to arrest plaintiffs without probable cause or reasonable suspicion and then to fabricate and swear to a false story to cover up the blatant violations of Plaintiffs' constitutional rights. Supervising officers were empowered to sanction and ratify and endorse said false story.  Pursuant to the aforementioned City customs, policies, usages, practices and/or rules, other officers failed to intervene in or report other officers' violations of Plaintiffs' rights.

280.  On information and belief, the City, by and through its agency, the NYPD have different customs, policies, usages, procedures and practices for crowd control and assembly of Black and Hispanic people than for their White counterparts.

281.  It is reasonably foreseeable that there would be a disparate impact of the implementation and actions taken upon such customs, policies, usages, procedures and practices in violation of Plaintiffs' right to equal protection under the law.

282.  Alternatively, even if there is no written policy that indicates that Black and Hispanic people are to be treated differently, on information and belief, the NYPD enforces its policies and practices in a disparate manner in violation of the Plaintiffs' right of equal protection.

283.  On information and belief, Defendants were deliberately indifferent to the harm created in the development and/or implementation of such customs, usages, policies, procedures and practices that can arise against people of color and which did specifically arise in connection with the Funeral Home incident and the unlawful actions perpetrated upon Plaintiffs  in connection therewith.

284. Defendants lack rational justification for such customs, usages, policies, procedures and practices, let alone a compelling one which would be required to sustain the same. Moreover, these customs, usages, policies, procedure and practices are not narrowly tailored to meet a legitimate police objective.

285. Plaintiffs' injuries were a direct and proximate result of Defendant City and the NYPD's wrongful *de facto* customs, policies, usages, practice and/or rules and of the knowing and repeated failure of Defendant City and its agency, the NYPD, to properly supervise, train and discipline their police officers.

286. As a result of the foregoing, Plaintiffs were assaulted, unlawfully detained and deprived of their rights of free speech, assembly, prayer and liberty; subjected to the criminal justice system; suffered great humiliation, costs and expenses; and were otherwise damaged and injured.

287. The City is liable for the damages sustained by Plaintiffs, respectively, as set forth herein.

**SIXTEENTH CAUSE OF ACTION**
**Violation of Plaintiffs' Federally Protection Right of**
**Equal Protection under 42 U.S.C. $ 1983**

288. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

289. The customs, policies, usages, practices and/or rules that have been developed, promulgated, maintained and enforced have resulted in unlawful discrimination based on race, ethnicity and/or national origin and have the effect of bias-based policing and profiling.

290. By their racially motivated conduct and actions in unlawfully detaining, searching, arresting, imprisoning Plaintiffs without probable cause or reasonable suspicion, and in fabricating evidence against Plaintiffs, Lt Alimeda, P.O. Khan, P.O. Grullon, P.O. McFarland, P.O. Monsour, P.O. Phillips, P.O. Cerimi, and J. Doe #1 through 27, acting with animus, and under color of law

and without lawful justification, intentionally, maliciously, and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, including its First, Fourth and Fourteenth Amendments.

291.   By their racially motivated conduct and actions in failing to intercede on behalf of Plaintiffs and protect them from the unjustified and unconstitutional treatment they received at the hands of the above identified Police Officer Defendants or otherwise assisting such officers in the transportation, processing/booking and other unlawful detention of the Plaintiffs, acting with animus, and under color of law and without lawful justification John and Jane Does #28 through 44, intentionally, maliciously, and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment of the U.S. Constitution.

**SEVENTEENTH CAUSE OF ACTION**
**Violation of the Prohibition of Bias-Based Policing**
**Pursuant to NYC Admin. Code Section 14-151**

292.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

293.   The customs, policies, usages, practices and/or rules that have been developed, promulgated, maintained and enforced have resulted in unlawful discrimination based on race, ethnicity and/or national origin and have the effect of bias-based policing and profiling.

294.   Defendants actions have violated the rights of the Plaintiffs hereinunder New York City Administrative Code Section 14-151.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants as follows:

(a)      Compensatory damages against all Defendants, jointly and severally, in an amount no less than one million dollars ($1,000,000.00) in respect of each of the Plaintiffs for a total of no less than five million dollars ($5,000.000.00), collectively.

(b)      Punitive damages against all Defendants, jointly and severally, in an amount no less than five million dollars ($5,000,000.00), in respect of each of the Plaintiffs for a total of no less than twenty-five million dollars ($25,000,000.00), collectively, except where so limited by applicable law;

(c)      Reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and New York City Administrative Code Section 14-151.

(d)      Interest on all amounts at the highest rates and from the earliest dates allowed by law for each of the Plaintiff's claims, respectively; and

(e)      Such other and further relief as this Court deems just and proper for each of the Plaintiffs herein.

Dated:  New York, New York
         July 18, 2025

                              THE CAMPBELL FIRM PLLC

                              By: /s/ Emily Campbell
                              _____
                              Emily Campbell (EC7702)
                              11 Broadway, Suite 615
                              New York, New York 10004
                              (212) 267-3600 Phone
                              (212) 267-3601 Fax
                              ecampbell@campbellfirm.com
                              **Attorneys for Plaintiffs**

## VERIFICATION

STATE OF NEW YORK    )
                     SS:
COUNTY OF KINGS      )

I, GREGORY CASTILLO, being duly sworn, deposes and says: I am a Plaintiff in this action. I have read the foregoing COMPLAINT and know the contents thereof. For all allegations based on my claims, the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and, as to those matters, I believe them to be true.

To my understanding, each of the other Plaintiffs in this action will verify the facts associated with each of such other Plaintiff's claims, respectively.

For allegations asserted to be common to all claims, I verify that they are true as applied to my claims, based on my own knowledge, except as to the matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

Gregory Castillo

Subscribed and sworn to before me on
This 18th day of July 2025

Notary Public

EMILY CAMPBELL
NOTARY PUBLIC, State of New York
No. 02CA5082435
Qualified in Kings County, Otsego County
Commission Expires July 28, 2025

## **VERIFICATION**

STATE OF NEW YORK    )
                     SS:
COUNTY OF KINGS      )

I, AKEIM DOWNIE, being duly sworn, deposes and says: I am a Plaintiff in this action. I have read the foregoing COMPLAINT and know the contents thereof. For all allegations based on my claims, the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and, as to those matters, I believe them to be true.

To my understanding, each of the other Plaintiffs in this action will verify the facts associated with each of such other Plaintiff's claims, respectively.

For allegations asserted to be common to all claims, I verify that they are true as applied to my claims, based on my own knowledge, except as to the matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

_____
Akeim Downie

Subscribed and sworn to before me on
This _18th_ day of July 2025

_____
Notary Public

EMILY CAMPBELL
NOTARY PUBLIC, State of New York
No. 02CA5082435
Qualified in Kings County
Commission Expires July 28, 2025

## VERIFICATION

STATE OF NEW YORK        )
                         SS:
COUNTY OF KINGS          )

I, JORGE GUERRERO, being duly sworn, deposes and says:  I am a Plaintiff in this action.  I have read the foregoing COMPLAINT and know the contents thereof.  For all allegations based on my claims, the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and, as to those matters, I believe them to be true.

To my understanding, each of the other Plaintiffs in this action will verify the facts associated with each of such other Plaintiff's claims, respectively.

For allegations asserted to be common to all claims, I verify that they are true as applied to my claims, based on my own knowledge, except as to the matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

_____
Jorge Guerrero

Subscribed and sworn to before me on
This _18th_ day of July 2025

_____
Notary Public

EMILY CAMPBELL
NOTARY PUBLIC, State of New York
No. 02CA5082435
Qualified in ~~~~ Otsego County
Commission Expires Jan 26, 2028

## **VERIFICATION**

STATE OF NEW YORK          )
                                               SS:
COUNTY OF KINGS            )

I, LARRY MOSES, JR., being duly sworn, deposes and says: I am a Plaintiff in this action. I have read the foregoing COMPLAINT and know the contents thereof. For all allegations based on my claims, the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and, as to those matters, I believe them to be true.

To my understanding, each of the other Plaintiffs in this action will verify the facts associated with each of such other Plaintiff's claims, respectively.

For allegations asserted to be common to all claims, I verify that they are true as applied to my claims, based on my own knowledge, except as to the matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

Larry Moses, Jr.

Subscribed and sworn to before me on
This /8th day of July 2025

Notary Public

EMILY CAMPBELL
NOTARY PUBLIC, State of New York
No. 02CA5082435
Qualified in Kings County Otsego County
Commission Expires July 28, 2025

## VERIFICATION

STATE OF NEW YORK )
                             SS:

COUNTY OF KINGS )

     I, AARON ROSE, being duly sworn, deposes and says:  I am a Plaintiff in this

action.  I have read the foregoing COMPLAINT and know the contents thereof.  For all

allegations based on my claims, the same are true to my own knowledge, except as to the

matters therein stated to be alleged upon information and belief, and, as to those matters,

I believe them to be true.

     To my understanding, each of the other Plaintiffs in this action will verify the

facts associated with each of such other Plaintiff's claims, respectively.

     For allegations asserted to be common to all claims, I verify that they are true as

applied to my claims, based on my own knowledge, except as to the matters therein

stated to be upon information and belief, and as to those matters, I believe them to be

true.

                                                             _____

                                                             Aaron Rose

Subscribed and sworn to before me on
This _18th_ day of July 2025

_____
Notary Public

EMILY CAMPBELL
NOTARY PUBLIC, State of New York
No. 02CA5082435
Qualified in Kings County _Otsego County_
Commission Expires July 28, _2025_